UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COREY HUME, ET AL. | CIVIL ACTION |
| VERSUS | NO. 15-0935 |
| CONSOLIDATED GRAIN & BARGE, INC., ET AL. | SECTION A(2) |

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment to Dismiss Plaintiff's Jones Act, Unseaworthiness and Maintenance and Cure Claims Against Quality Marine Services, Inc. (Rec. Doc. 105)** filed by Quality Marine Services, Inc. ("Quality Marine"). The motion is opposed by Plaintiffs, Defendant Consolidated Grain and Barge, and Defendant Nationwide. The motion, set for submission on August 10, 2016, is before the Court on the briefs without oral argument. This matter is set to be tried to a jury beginning August 14, 2017.

**I.   Background**

*i.   Overview*

Plaintiffs Corey Hume and Clarence Robinson were employees of Defendant Consolidated Grain and Barge ("CGB"). (Rec. Doc. 1, Compl. ¶ 4). According to the complaint, Plaintiffs were employed by CGB as Jones Act Seamen aboard the M/V Bayou Special. (*Id.* ¶ 4). The M/V Mr. Lewis, owned and operated by Quality Marine, "was attached to and/or pushing" the Bayou Special. (*Id.* ¶ 5). According to the complaint, a "breast wire/running wire" of the Bayou Special "rose up and struck" Plaintiffs, hitting each of them in the face and head. (*Id.* ¶ 6). Both Plaintiffs suffered brain injuries, Robinson lost an eye, and Hume's injuries required him to have the side of his face reconstructed. (Rec. Doc. 37).

*ii.   Facts*

The incident occurred on February 10, 2015. (Rec. Doc. 1, Compl. ¶ 4). The Bayou Special had been moored to the M/V Sapphire; in other words, the boats had been connected to each other

1

using wires. (Rec. Doc. 105-5 at 6). Prior to the accident, the Bayou Special had been taking cargo from the M/V Sapphire. (Rec. Doc. 105-6 at 6). After the cargo had been unloaded, CGB ordered the M/V Mr. Lewis, a tug boat, to come and tow the Bayou Special away from the M/V Sapphire and then take the Bayou Special to a nearby area. (Rec. Doc. 105-9 at 10, 11, 12). The Mr. Lewis arrived and fastened itself using wires to the stern, or back, of the Bayou Special. (Rec. Doc. 105-9 at 2-3). The Mr. Lewis would then work as directed by CGB. (*See* Rec. Doc. 105-9 at 16).

To remove the Bayou Special from alongside the M/V Sapphire, personnel needed to release the wires connecting the boats. (Rec. Doc. 105-6 at 7-8). Jerard Caballero worked as the winch operator, meaning he operated the machines that loosened and tightened the wires. (Rec. Doc. 105-5 at 20). He was stationed aboard the Bayou Special.

The first wire to be released was the stern wire. (Rec. Doc. 105-6 at 7-8). To release the stern wire, the Bayou Special had to drop back alongside the M/V Sapphire toward the M/V Sapphire's stern by slacking—removing tension from—the bow and breast wires. (Rec. Doc. 105-5 at 9). On the night of the incident, the Bayou Special released the stern wire without issue. (*See id.* at 10). During this process of releasing the stern wire, the Mr. Lewis had remained fastened to the Bayou Special. (Rec. Doc. 105-9 at 12). The tug had "knuckled in reverse," as ordered, to help pull the Bayou Special back toward the M/V Sapphire's stern. (*See id.*)

After releasing the stern wire, the Bayou Special, with the Mr. Lewis fastened to it at the stern, began moving forward toward the front of the M/V Sapphire. (*See* Rec. Doc. 105-5 at 9). The Bayou Special moved forward by loosening and tightening the remaining two wires, the breast wire and the bow wire. (*Id.*) While the Bayou Special did this, the Mr. Lewis remained knuckled in reverse, as ordered. (*See* Rec. Doc. 105-5 at 11).

As the Bayou Special moved forward, the breast wire fell below the deck of the Bayou Special a few times. (*Id.* at 21-22). When this happened, Caballero would lift the wire by operating the winches that controlled the wires. (*Id.*) He said he would stop pulling on the head wire and pull up on the breast

2

wire. (*Id.*) At some point, Caballero had seen the wire fall into the water, and he knew it had been "pinched" because the machine operating the wire strained and made noise. (*Id.*) Caballero continued to attempt to move the Bayou Special forward. (*See id.* at 14-16). Caballero said that by the time he realized that the machine was straining more than it typically did, the breast wire had shot up into the air and struck Plaintiffs Hume and Robinson, who were working aboard the M/V Sapphire. (*See id.*) Caballero testified that the wire must have gotten caught on the "bumpers" of the boat. (*Id.*) He said he had seen the wires become caught on tires before, "dozens of times," and when that happens, the wire will rip the tire off the rig and bring the tire up with it when it breaks free. (*Id.*) During this entire time, the Mr. Lewis had remained knuckled in reverse, as ordered, and let itself be pulled by the Bayou Special. (Rec. Doc. 105-9 at 6).

**II.  Analysis**

In the instant motion, Quality Marine seeks the dismissal of plaintiffs' claim against Quality Marine for general maritime law negligence, arguing that Plaintiffs can produce no evidence of negligence on the part of Quality Marine or the Mr. Lewis.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)). Rule 56, which governs summary judgment, must be construed "with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex*, at 327.

The elements of a claim for negligence under general maritime law are "essentially the same as land-based negligence under the common law." *In re Great Lakes Dredge & Dock Co.*, 624 F. 3d 201, 211 (5th Cir. 2010) (quoting *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005)). The plaintiff must demonstrate that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff sustained an injury; and (4) a causal connection exists between the defendant's conduct and the plaintiff's injury. *Id.* (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)).

Courts have held that when a helper tug only took orders from the vessel being assisted and no evidence indicates that the tug caused or contributed to the injury, the tug must be exonerated from liability. *See M. A. Smith Drilling Corp. v. Tug Captain Al*, 230 F.Supp. 260, 264 (E.D. La. 1964) (West, J.); *Moran Towing & Transp. Co. v. Empresa Hondurena de Vapores*, 194 F.2d 629, 632 (5th Cir. 1952).

At this stage, it appears that the helper tug doctrine may ultimately absolve Quality Marine from liability. However, to make such a ruling at this time would be premature. Discovery is incomplete, as the deadline to complete discovery is June 27, 2017. Plaintiffs note that they plan to retain liability experts to review the work of all parties involved and determine which parties violated maritime and workplace standards.

4

The oppositions also raise issues that may need to be further explored. They assert that the captain of the Mr. Lewis improperly positioned the tug against the Bayou Special; had he positioned the tug differently, he would have been able to personally observe the work of Caballero and other personnel, instead of relying on deckhands to be his "eyes and ears," as he said. He would have seen the wire fall into the water, and he could have stopped Caballero and prevented the accident. The oppositions also assert that the negligent hiring and training of Quality Marine's deckhands contributed to the accident.

In light of the foregoing, the Court finds that it would be premature to grant Quality Marine's motion at this time, in light of the ongoing nature of discovery.

Accordingly;

**IT IS ORDERED** that **Motion for Summary Judgment to Dismiss Plaintiff's Jones Act, Unseaworthiness and Maintenance and Cure Claims Against Quality Marine Services, Inc. (Rec. Doc. 105)** is **DENIED WITHOUT PREJUDICE**. Quality Marine may refile this motion at a later date;

**IT IS FURTHER ORDERED** that the **Motion for Leave to File Sur-Reply Memorandum (Rec. Doc. 142)** filed by Consolidated Grain and Barge is **DENIED AS MOOT**.

New Orleans, Louisiana, this 18th day of August, 2016

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE
